[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 213.]

THE STATE EX REL. SANESE SERVICES, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Sanese Serv. v. Indus. Comm*., 1997-Ohio-397.]

*Workers' compensation—Wage-loss compensation under R.C. 4123.56(B)—
Employee demoted from route supervisor to host floater—Industrial
Commission does not abuse its discretion in choosing claimant's wages as
a route supervisor as the amount from which to deduct claimant's reduced
earnings as a host floater in determining wage-loss compensation.*

(No. 95-418—Submitted April 15, 1997—Decided July 16, 1997.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD11-1602.

———————————

{¶ 1} Appellee-claimant, John Ogg, was injured in 1989 while in the course
of and arising from his employment as a "route supervisor" for appellant, Sanese
Services. When injured, claimant was making approximately $512 per week.
Following several months of recuperation, he returned to his former job as route
supervisor.

{¶ 2} In November 1990, claimant received a written performance warning
from Sanese. The warning was in response to two separate incidents in which
claimant had left his route money box on a customer's dock and had driven away.
When claimant's performance failed to improve, he was demoted, in February
1991, to a "route skipper" with weekly earnings of $400.

{¶ 3} Shortly thereafter, claimant's medical condition worsened. Following
a period of temporary total disability, claimant returned to a job at Sanese that was
consistent with his physical restrictions. That job, as a "host floater," paid $280 per
week.

**{¶ 4}** Claimant applied for wage-loss compensation pursuant to R.C. 4123.56(B). A district hearing officer for appellee Industrial Commission granted the application, stating:

"* * * [T]he claimant has met his burden of persuasion on the issue of wage loss. In this regard, the Hearing Officer finds persuasive the 6-2-91 report of Dr. Steiman and the 7-29-91 report of Dr. Merryman who both relate [that] claimant is capable of only light duty employment, which is different than his former position of employment. Additionally, the Hearing Officer finds that claimant returned to work 8-5-91 in a reduced capacity consistent with his functional limitations. Accordingly, wage loss compensation is to be paid at the formula of full weekly wage — actual wages earned times 2/3. This award shall begin on 8-5-91 and shall continue upon submission of wage documentation, subject to the statutory maximum and [district hearing officer] Order terminating the benefit.

"It is noted that the self-insured employer has begun to pay the above wage loss compensation but at an incorrect rate. The self-insured employer shall adjust the award consistent with this order. * * *"

**{¶ 5}** The regional board of review affirmed. Staff hearing officers, however, modified the prior orders as follows:

"* * * The Staff Hearing Officers find no persuasive legal arguments for adjusting the claimant's rate of payment for Wage Loss, as argued by the employer. The rate of payment is based on the higher of the Average Weekly Wage or Full Weekly Wage for the former position of employment at the time of injury, route supervisor. A later job demotion for reasons unrelated to the injury is not relevant evidence to this determination.

"In all other aspects [the] order of the Regional Board is affirmed."

**{¶ 6}** Sanese filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in using

claimant's wages as route supervisor as the basis for determining the amount of wage loss. The court of appeals denied the writ.

{¶ 7} This cause is now before this court upon an appeal as of right.

_____

*Porter, Wright, Morris & Arthur, Diane C. Reichwein* and *Christopher C. Russell*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Jeffrey B. Duber*, Assistant Attorney General, for appellee Industrial Commission.

*Gibson & Robbins-Penniman* and *Gus Robbins-Penniman*, for appellee Ogg.

_____

*Per Curiam.*

{¶ 8} R.C. 4123.56(B) provides:

"Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than his former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, he shall receive compensation at sixty-six and two-thirds per cent of his weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks."

{¶ 9} Ohio Adm.Code 4121-3-32(D) states:

"In injury claims in which the date of injury * * * is on or after August 22, 1986, the payment of compensation [for] wage loss pursuant to division (B) of section 4123.56 of the Revised Code shall commence upon application with a finding of any of the following:

"(1) The employee, as a direct result of the allowed conditions in the claim, returns to employment other than his former position of employment and suffers a wage loss.

"(2) The employee returns to his former position but suffers a wage loss.

3

"(3) The employee, as a direct result of the allowed conditions in the claim, is unable to find work consistent with the employee's physical capabilities and suffers a wage loss."

{¶ 10} Sanese does not assail claimant's wage-loss eligibility under Ohio Adm.Code 4121-3-32(D)(1). It challenges instead the amount payable. Wage loss is contingent on a post-injury earnings reduction. At issue is the amount from which claimant's wages as a host floater is to be deducted.

{¶ 11} Wage-loss compensation is not mentioned in R.C. 4123.61, the "average weekly wage" statute. Ohio Adm.Code 4121-3-32(A)(5), however, defines "wage loss" as "the difference between the employee's present earnings and the greater of the employee's full weekly wage or average weekly wage." The commission followed this formula here.

{¶ 12} Sanese's argument suggests that claimant's actions—specifically those that precipitated his demotion—break the causal relationship between the claimant's injury and the amount of wage loss claimed, and necessitate a departure from this formula. We find the analysis in *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 623 N.E.2d 1202, persuasive here. There, we declined to elevate employee conduct to a preeminent factor in determining eligibility for wage-loss compensation. We held that employee conduct was not an automatic bar to wage-loss compensation based upon our overriding concern of furthering the purposes of the Workers' Compensation Act, which is to compensate workers for injuries suffered in their employment. Thus, while the commission could deny wage-loss compensation based on a claimant's actions, it was not compelled to do so.

{¶ 13} We find that this same logic applies to calculating the amount of wage-loss compensation as well. Consequently, the commission did not abuse its discretion in choosing claimant's wages as a route supervisor as the amount from which to deduct claimant's reduced earnings as a host floater.

**{¶ 14}** The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

—————————————